UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DEBORAH BLACKBURN,

    Plaintiff,

v.                                                                        Case No: 8:16-cv-3372-T-JSS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## **ORDER**

    Plaintiff, Deborah Blackburn, seeks judicial review of the denial of her claims for a period of disability and disability insurance benefits. As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the decision is affirmed.

## **BACKGROUND**

### A.    **Procedural Background**

    Plaintiff filed an application for a period of disability and disability insurance benefits on September 10, 2013. (Tr. 191–97.) The Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 89–110.) Plaintiff then requested an administrative hearing. (Tr. 125–26.) Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 29–87.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claim for benefits. (Tr. 17–22.) Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied. (Tr. 1–6.)

Plaintiff then timely filed a complaint with this Court. (Dkt. 1.) The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

### B. Factual Background and the ALJ's Decision

Plaintiff, who was born in 1952, claimed disability beginning on December 31, 2006. (Tr. 90.) Plaintiff completed college and medical school and worked as a gynecologist. (Tr. 437–38.) Plaintiff alleged disability due to lumbar and cervical spinal stenosis, severe peripheral neuropathy of her legs and feet, neuropathy and stenosis induced leg weakness and pain, progressive weakness of upper legs, pernicious anemia, osteoarthritis of multiple sites, and chronic insomnia secondary to back pain and arthritis. (Tr. 90.)

In rendering the decision, the ALJ the concluded that Plaintiff engaged in substantial, gainful activity ("SGA") from the alleged onset date of December 31, 2006, through the date she was last insured, December 31, 2011. (Tr. 19.) Further, the ALJ concluded there was no continuous twelve-month period during which Plaintiff did not engage in SGA through December 31, 2012. (Tr. 22.) Accordingly, the ALJ concluded that Plaintiff was not under a disability at any time from the alleged onset date through the date Plaintiff was last insured. (*Id.*)

## APPLICABLE STANDARDS

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. § 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## ANALYSIS

Plaintiff challenges the ALJ's decision on the following ground: at step one of the sequential process, the ALJ erred by finding that Plaintiff has performed SGA during the relevant period, the time between her alleged onset date and her date last insured. In evaluating whether Plaintiff had performed SGA, the ALJ applied the three tests used for self-employed claimants set forth in 20 C.F.R. § 404.1575(a)(2) and Social Security Ruling 83-34. (Tr. 20.) The ALJ concluded that Plaintiff had not been performing SGA under Tests 1 or 2. (Tr. 20–21.) Plaintiff agrees with these findings and does not dispute them in this appeal. (Dkt. 11 at 7–8.) Plaintiff argues that the ALJ erred by finding that Plaintiff had been performing SGA under Test 3. (Dkt. 11 at 9–15.) For the reasons that follow, Plaintiff's contention does not warrant reversal.

In evaluating a self-employed claimant's work activity, the ALJ considers the claimant's "activities and their value to [the claimant's] business to decide whether" the claimant has been engaging in SGA. 20 C.F.R. § 404.1575(a)(2). The ALJ "will not consider [the claimant's] income alone because the amount of income [the claimant] actually receive[s] may depend on a

number of different factors, such as capital investment and profit-sharing agreements," and evaluates work activity "based on the value of [the claimant's] services to the business regardless of whether [the claimant] receive[s] an immediate income." *Id.* Under Test 1, a claimant has been performing SGA if the claimant renders services "that are significant to the operation of the business and receive[s] a substantial income from the business." *Id.* § 404.1575(a)(2)(i). The ALJ concluded that Plaintiff did not meet Test 1 because she did not receive substantial income in 2011 and 2012, which is not at issue. (Tr. 20.) Under Test 2, a claimant has been performing SGA if the claimant's "work activity, in terms of factors such as hours, skills, energy output, efficiency, duties, and responsibilities, is comparable to that of unimpaired individuals in [the claimant's] community who are in the same or similar businesses as their means of livelihood." 20 C.F.R. § 404.1575(a)(2)(ii). The ALJ concluded that Plaintiff did not meet Test 2 because she was not working on a full-time basis, and thus her work was not comparable to that of an unimpaired individual, and Plaintiff does not dispute this finding. (Tr. 21.)

Plaintiff disputes the ALJ's finding that Plaintiff had been performing SGA under Test 3. (Tr. 21–22.) Under Test 3, a claimant has engaged in SGA "if [the claimant's] work activity, although not comparable to that of unimpaired individuals, is clearly worth the amount shown in § 404.1574(b)(2)[1] when considered in terms of its value to the business, or when compared to the

---

[1] Section 404.1574(b)(2) provides as follows:

> (2) Earnings that will ordinarily show that you have engaged in substantial gainful activity. We will consider that your earnings from your work activity as an employee (including earnings from work in a sheltered workshop or a comparable facility especially set up for severely impaired persons) show that you engaged in substantial gainful activity if:
>
> * * *
>
>     (ii) Beginning January 1, 2001, and each year thereafter, they average more than the larger of:
>         (A) The amount for the previous year, or
>         (B) An amount adjusted for national wage growth, calculated by multiplying $700 by the ratio of the national average wage index for the year 2 calendar years before the year

salary that an owner would pay to an employee to do the work [the claimant is] doing." *Id.* § 404.1575(a)(2)(iii); *Titles II & Xvi: Determining Whether Work Is Substantial Gainful Activity-Self-Employed Persons*, SSR 83-34, 1983 WL 31256, (S.S.A. 1983) (explaining that Test 3 is as follows: "The individual's work activity, although not comparable to that of unimpaired individuals as indicated above, is, nevertheless, clearly worth more than the amount shown for the particular calendar year in the SGA Earnings Guidelines when considered in terms of its value to the business, or when compared to the salary an owner would pay to an employee for such duties in that business setting").

In evaluating whether Plaintiff met Test 3, the ALJ considered Plaintiff's financial records and her hearing testimony. (Tr. 19.) At her hearing, Plaintiff testified that she filed for partial disability in 2005 because of her pain and symptoms and reduced her work schedule from full-time to four hours a day. (Tr. 45.) She worked this reduced schedule from 2005 until 2012, when she closed her practice. (Tr. 47, 61–64, 476–78.) The ALJ found that Plaintiff "operated her business during this period essentially as a solo practitioner sharing office space with another doctor, and while she employed support staff, it was primarily her work and expertise, i.e., treating patients and billing insurance, that derived income for her business." (Tr. 21.)

The ALJ reviewed the corporate tax returns for Plaintiff's gynecology practice in 2011, in which her practice generated corporate income of over $200,000 and paid expenses of over $165,000 (Tr. 339, 354), and 2012, in which her practice generated corporate income of over $189,000 and paid expenses of over $163,000 (Tr. 361, 377). (Tr. 21.) The ALJ reasoned that

---

for which the amount is being calculated to the national average wage index for the year 1998. We will then round the resulting amount to the next higher multiple of $10 where such amount is a multiple of $5 but not of $10 and to the nearest multiple of $10 in any other case.

20 C.F.R. § 404.1574(b)(2)(ii).

because Plaintiff's "testimony indicates that she maintained her four-hour per day work schedule throughout the period at issue," the "annual corporate income was likely comparable throughout the period from 2006-2012."[2] (Tr. 21.) The ALJ concluded that Plaintiff's work activity in support of her business "was clearly worth more than the amount shown for the particular years in question in the SGA Earnings Guidelines . . . when considered in terms of its value to her business, and in particular, when compared to the salary that an owner would pay an employee for such duties in that business setting." (*Id.*) Thus, the ALJ concluded that even working reduced hours, "the value of [Plaintiff's] work, in terms of the salary an owner would be expected to pay an employee for those duties in that business setting, clearly exceed the monthly amounts set forth at POMS DI 10501.015." (*Id.*) (citing Program Operations Manual System ("POMS") DI 10501.015, which indicates that monthly income ranging from $860 in 2006 to $1,010 in 2012 qualifies as "substantial").[3] This was because Plaintiff's "business generated significant income and paid significant expenses, primarily through her efforts — which efforts would surely have commanded more than $860-$1010 per month had they been delegated to another employee." (Tr. 21–22.)

### A. Test 3, First Prong: Value to the Business

First, Plaintiff argues that, in assessing the value of Plaintiff's work activities to her practice, the ALJ was required to "build an accurate and logical bridge between the evidence and her conclusion," but that her decision provided "no rationale, no analysis, no reasoning." (Dkt. 11 at 9–10.) However, as Defendant points out (Dkt. 14 at 6–7), Plaintiff cites portions of SSR 83-34 and a case from the Eastern District of Tennessee setting forth the standards required under Test 2 for assessing whether a claimant's work is comparable to unimpaired individuals in the

---

[2] The record contains the 2006 corporate income tax return for Plaintiff's practice, in which the practice generated corporate income of over $312,000. (Tr. 280.) However, most of this year does not fall within the relevant period because Plaintiff's alleged onset date is December 31, 2006.
[3] POMS DI 10501.015 is available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0410501015.

same community engaged in the same business (Dkt. 11 at 9–10). *See Young v. Colvin*, No. 3:12-CV-272, 2013 WL 4591574, at *9 (E.D. Tenn. Aug. 28, 2013) (quotations omitted) (discussing Test 2 and explaining, by citing SSR 83-34, that the development of the comparison between the claimant and the unimpaired control group "must be specific, and each work factor cited above must be described in detail, showing its contribution to the business operation. General descriptions are considered inconclusive evidence for the point-by-point comparison that is required."). And, contrary to Plaintiff's argument, the ALJ provided sufficient reasoning and citations to the record in concluding that Plaintiff had performed SGA under Test 3. As set forth above, the ALJ concluded that, based on Plaintiff's hearing testimony and the corporate tax returns contained in the record, Plaintiff's "business generated significant income and paid significant expenses, primarily through her efforts — which efforts would surely have commanded more than $860-$1010 per month had they been delegated to another employee." (Tr. 21–22.)

Next, Plaintiff again conflates the standards of two separate tests under 20 C.F.R. § 404.1575(a)(2). Under Test 1, in addition to rendering services that are significant to the business's operation, the claimant must "receive a substantial income from the business." 20 C.F.R. § 404.1575(a)(2)(i). Test 1 goes on to say that "[p]aragraphs (b) and (c) of this section explain what we mean by significant services and substantial income *for purposes of this test*." *Id.* (emphasis added). "Substantial income" under Test 1 is determined by deducting specified deductions, including normal business expenses, from the business's gross income. *Id.* § 404.1575(c)(1). Plaintiff argues that the ALJ should have used this same standard in evaluating the worth of Plaintiff's work activities under Test 3. (Dkt. 11 at 10–11.) However, Plaintiff's argument is not supported by the plain language of Section 404.1575(a)(2)(i), which states that the definition of "substantial income" provided in Section 404.1575(c) applies to Test 1.

Finally, Plaintiff argues that the ALJ's conclusion regarding the value of Plaintiff's work activities to her practice is erroneous because Plaintiff's practice was "operating in the red." (Dkt. 11 at 11–12.) Specifically, Plaintiff argues that the ALJ did not account for portions of the practice's gross incomes that were a payment of shared expenses from another doctor in the amount of $8,650, and Plaintiff's personal loans to the practice in the amounts of $5,000 in 2011 and $15,000 in 2012. (*Id.* at 11.) In response, Defendant argues that "[t]he fact that [Plaintiff's] expenses outpaced her income does not detract from the value of her work for the business." (Dkt. 14 at 9.)

The Court agrees with Defendant. In its introduction, SSR 83-34 explains that in assessing the value of a self-employed claimant's activities to the claimant's business, "[s]elf-employment income alone is not a reliable factor in determining SGA," and "[a]n individual's services may help build up capital assets during a period of development when no profits are evident, or they may reduce losses during temporary periods of poor business conditions." SSR 83-34, 1983 WL 31256, at *1. Thus, SSR 83-34 instructs that it is necessary "to consider the economic value of the individual's services, regardless of whether an immediate income results from such services." *Id.* Further, to the extent Plaintiff argues that the ALJ erred by concluding that Plaintiff's corporate income was likely comparable to the practice's 2011 and 2012 income because the ALJ "lack[ed] corporate tax returns" for other years (Dkt. 11 at 11), Plaintiff overlooks that it is her burden to show she is not engaging in SGA. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987) ("The claimant first must bear the burden at step one of showing that he is not working."). For these reasons, Plaintiff's contentions do not warrant reversal.

### B. Test 3, Second Prong: Salary to Comparable Employee

Plaintiff argues that there is no "rationale, reasoning, analysis, or expert opinion" to support the ALJ's finding that Plaintiff's work activities were worth more than the SGA Earnings Guidelines when compared to the salary that an owner would pay to an employee performing the work Plaintiff was performing. (Dkt. 11 at 12–14.) Specifically, Plaintiff contends that the ALJ was required to "make a determination on the amount that would be paid to another gynecologist for the services [Plaintiff] performed." (*Id.* at 12.)

In this argument, Plaintiff again uses the standards for assessing whether the claimant is performing SGA under Test 2, not Test 3. As described above, Test 2 is met when the claimant's work activity is comparable to that of unimpaired individuals. 20 C.F.R. § 404.1575(a)(2)(ii). Test 2 requires a comparison between the claimant's work activities and a control group of unimpaired persons with the same self-employment. SSR 83-34, 1983 WL 31256, at *9 ("Development must be specific. Each work factor cited above must be described in detail, showing its contribution to the business operation. General descriptions are considered inconclusive evidence for the point-by-point comparison that is required. If only a general description is possible or available, any doubt as to the comparability of the factors should be resolved in favor of the impaired individual."). Plaintiff cites a Southern District of Florida decision (Dkt. 11 at 14), in which the court remanded for further development of the record as to whether the claimant met Test 2, not Test 3. *Diaz v. Colvin*, No. 13-23052-CIV, 2014 WL 12531528, at *20–21 (S.D. Fla. Aug. 11, 2014) (citing *Young*, 2013 WL 4591574 at *9 and remanding for the ALJ to "develop the record and provide a sound analysis to support the finding that the self-employment work of [claimant] was comparable to that of unimpaired individuals in the community who were in the same or similar businesses as their means of livelihood").

As to Test 3, "the degree to which evidence of comparability or worth of services should contain data supplied by outside authorities (e.g., county agents, etc.) will depend on the factual situation," and, "[i]n many instances, familiarity with local conditions will make it unnecessary to document the file in great detail." SSR 83-34, 1983 WL 31256, at *10. "[W]here there is any doubt as to the comparability or worth of services, it will be necessary to obtain evidence in appropriate detail, supplemented as required by opinions from authoritative sources in the community." *Id.* Here, the ALJ provided the following description of Plaintiff's work activities:

> The record indicates that, from 2006-2012, the claimant continued in the practice of medicine, including treating patients (8E, HT [hearing testimony]). The claimant operated her business during this period essentially as a solo practitioner sharing office space with another doctor, and while she employed support staff, it was primarily her work and expertise, i.e., treating patients and billing insurance, that derived income for her business (HT).

(Tr. 21.) Plaintiff has not raised an argument concerning why additional evidence was required.

Finally, Plaintiff argues that, given Plaintiff's limitations of working four hours per day, requiring breaks during which she can lie down, and not performing surgery, an employer would not pay an employee to do work with this degree of limitation. (Dkt. 11 at 13.) However, SSR 83-34 provides that "[w]ork may be substantial even if it is performed on a part-time basis, or even if the individual does less, has less responsibility, or makes less income than in previous work," and even if a profit is not realized. SSR 83-34, 1983 WL 31256, at *1.

C. **Public Policy Argument**

Finally, Plaintiff argues that public policy considerations weigh against "punishing" Plaintiff for being self-employed because, had she had been employed, she would been found incapable of performing a forty-hour work week employers expect. (Dkt. 11 at 15.) However, as Defendant argues (Dkt. 14 at 10), the Court's review "is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal

standards were applied." *Wilson*, 284 F.3d at 1221. Accordingly, Plaintiff's final contention does not warrant reversal.

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**ORDERED**:

1. The decision of the Commissioner is **AFFIRMED**.

2. The Clerk of Court is directed to enter final judgment in favor of the Commissioner and close the case.

**DONE** and **ORDERED** in Tampa, Florida, on February 20, 2018.

                                                     *[signature]*
                                                     JULIE S. SNEED
                                         UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record